IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-01082-WDM

WILLIAM G. GARTZKE,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant.

## MEMORANDUM OPINION AND ORDER

Miller, J.

     Plaintiff William G. Gartzke ("Gartzke") appeals the denial of his application for disability insurance benefits by defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). I have considered the parties' written and oral arguments, as well as the evidence contained in the certified administrative record. For the reasons that follow, I conclude this case should be remanded to the Commissioner.

<u>Background</u>

     Gartzke was born in 1970 and has a high school education. Prior to 2003, when he claims his back pain became disabling, Gartzke worked as a baggage handler for United Airlines.

     On April 18, 2003, Gartzke submitted an application to the Social Security Administration for disability insurance benefits claiming he became disabled as of December 7, 2002. After this application was denied on initial review, he requested and received a hearing before an Administrative Law Judge (ALJ). Following this hearing held

October 7, 2004, the ALJ issued a decision finding that Gartzke is not disabled.

On appeal to the Social Security Appeals Council, Gartzke presented medical records that were not available at the time of the hearing before the ALJ. The Appeals Council considered this evidence, but nonetheless declined review of the ALJ's decision, making it the final decision of the Commissioner for review in this court.

Medical History

Gartzke began seeking medical treatment for unexplained back pain in 2000. Although he did not have a prior history of back problems, he could not identify any specific incident causing what he claimed was severe and constant pain located in his right hip, right buttock, and to the right of his spine. Over the next four years, Gartzke's physicians were generally unable to determine any physical cause for his pain, and although a great number of treatments were attempted, Gartzke continued to describe constant pain that, if anything, was gradually increasing in severity. In addition, since Gartzke's prescribed treatment called for very large doses of narcotics and other pain medications, he eventually became quite dependant upon these drugs. Gartzke was also treated with anticonvulsants, physical therapy, injections, mental health counseling, and psychotherapeutic medication.

After the hearing before the ALJ, however, Gartzke experienced a breakthrough. One of his doctors, Dr. Scott Hompland, DO, diagnosed his problem as facet joint syndrome, and performed a branch neurotomy and a joint nerve neurotomy — procedures which involve targeted injections designed to chemically deaden the specific nerve or nerves thought to be causing the pain. (*See* Admin. R. at 517.) After these procedures, Gartzke reported dramatic improvement, with pain that was only about 3 on a scale of 10,

2

and would probably be lower if he had not recently engaged in activities that aggravated his back. *Id.* at 515.

Administrative Proceedings

The Secretary has established a five-step evaluation process to determine whether a claimant is disabled for purposes of the Social Security Act. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing [his] past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

Following this process In this case, the ALJ denied Gartzke's claim on two alternative grounds. First, the ALJ determined at step two that Gartzke did not have any severe impairments because his physicians had never been able to identify any medically determinable cause for his subjective complaints of pain. *See* 42 U.S.C. § 423(d)(5)(A) (providing that subjective complaints of pain alone will not demonstrate disability, and requiring evidence "of a medical impairment that . . . could reasonably be expected to produce the pain or other symptoms alleged . . . ."). Alternatively, the ALJ proceeded through the other three stages and made a determination that Gartzke had a residual functional capacity ("RFC") to do sedentary work with some additional restrictions. Based on testimony from a vocational expert ("VE"), the ALJ found that Gartzke is not disabled because he could work as a final assembler, touch-up screener, charge account clerk, surveillance systems monitor, or a call-out operator.

3

The medical evidence that the ALJ discussed as relevant to his RFC determination can be summarized as follows.

a.     Edward Manring, MD

Dr. Manring performed a consultative examination of Gartzke and found "no objective reason for limits on lifting, carrying, standing or sitting." (Admin. R. at 402.) He also concluded that "[t]he whole problem is subjective" and that "the disparity between the symptoms [and] the physical findings suggest an unreliable history." *Id.*

b.     Todd Dextradeur, MD

Dr. Dextradeur also performed a consultative examination of Gartzke. In contrast to Dr. Manring, however, Dr. Dextradeur gives no indication of doubting Gartzke's physical limitations because of the lack of an objectively determinable cause. *See id.* at 391-393.) Dr. Dextradeur found that Gartzke retained the functional capacity to do the following:

- stand and walk for up to 2 hours per day with breaks every 20 minutes;
- sit up to two hours per day with hourly changes in position;
- lift 10 pounds frequently and 20 pounds occasionally, and carry these; weights up to 30 feet;
- stoop, crouch, and bend occasionally.

*Id.* at 393.

c.     John Schaeffer, DO

Dr. Schaeffer is a psychiatrist who performed a consultative examination of Gartzke and found that the majority of Gartzke's mental impairments were caused by his "opiod dependance." *Id.* at 389. In addition, Dr. Schaeffer repeatedly emphasizes the lack of an

4

apparent physical cause of Gartzke's alleged pain, and in part[1] because of this discrepancy, suggested that Gartzke may be malingering.

      d.    Paul Kassab, MD

The vast majority of Gartzke's medical records come from his treating physicians at Kaiser Permanente, covering treatment from late 2001 to late 2004. These records are voluminous (about 240 pages) and fairly cryptic, but the ALJ specifically noted that on repeated occasions, Paul Kassab, MD, one of Gartzke's treating physicians, opined that Gartzke was completely disabled. *Id.* at 26.

      e.    Brent Arnold, MD

Dr. Arnold is another physician associated with Kaiser Permanente and is one of Gartzke's treating physicians. Dr. Arnold completed a questionnaire where he opines that Gartzke retains the functional capacity to do the following:

- sit for up to 90 minutes at a time for up to 8 hours a day

- stand or walk for up to 30 minutes at a time

- lift up to 10 pounds occasionally

- occasionally reach overhead, infrequently push, pull, kneel, crouch, stoop, twist, climb stairs, or balance, and frequently reach in front or handle objects bilaterally.

In addition, Dr. Arnold also noted that Gartzke would have to be able to shift positions at will, lie down and elevate his feet during the day and take 15-30 minute breaks every 60-90 minutes. Dr. Arnold also stressed that Gartzke would need to miss

---

[1] Dr. Schaeffer also noted that he suspected malingering due to hesitancy and resistance during the interview process and Gartzke's "extreme vagueness" when responding to questions. (Admin. R. at 390.)

work about 4 times a month. *Id.* at 366-71.

  f. Gartzke's testimony and responses to questionnaires

  At the hearing, Gartzke testified that he can only stand for a half hour, sit for about an hour, and walk for about 20 minutes before he needs a break. *Id.* at 539-40. In addition, he has indicated in his testimony and in questionnaires that his daily activities include loading the dishwasher, *id.* at 89, 90, taking care of and playing with his 3 year old son, *id.* at 89, 542, limited cleaning, *id.* at 94, 543, cooking simple meals (leftovers & frozen dinners), *id.* at 90, driving, id. at 90, 542, helping his wife with shopping, *id.* at 90, caring for himself, *id.* at 90, 94, and physical therapy, *id.* at 543-44. The ALJ found that Gartzke was not fully credible primarily because of the apparent lack of a medically determinable cause for his complaints of pain and because his reports of his daily activities were inconsistent with his allegations of such severe pain.

  Based upon this evidence, and taking into account his credibility findings, the ALJ determined that Gartzke retained the physical capacity to do the following:

-   lift 10 pounds occasionally and less than 10 pounds frequently;

-   stand and walk for 30 minutes at a time for up to 3 hours a day;

-   sit for 2 hours at a time for 6+ hours in a workday;

-   occasionally climb stairs or ramps, balance, stoop, kneel, crouch or crawl.

*Id.* at 30.[2]

  The Appeals Council determined that the new evidence from Dr. Hompland did not provide a basis for changing the ALJ's decision.

---

  [2] In addition, the ALJ's RFC findings included some other miscellaneous restrictions not really in dispute such as restrictions on exposure to extreme humidity and cold, and working on rocky terrain or at unprotected heights. *Id.* at 30.

Standard of Review

I review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner must apply the correct legal standard, and must provide the court with a sufficient basis to determine that appropriate legal principles were followed. *Nielson v. Sullivan*, 992 F.2d 1118, 1119-1120 (10th Cir. 1993).

Discussion

Gartzke makes three arguments on appeal: (1) the new evidence submitted to the Appeals Council requires a remand to the ALJ for a reassessment; (2) the ALJ failed to reconcile the discrepancy between his Step 5 findings and the descriptions of jobs cited pursuant to the *Dictionary of Occupational Titles*; (3) the ALJ erred in his credibility determination.

1.    New Evidence

When a claimant submits evidence to the Appeals Council that was not presented to the ALJ, the Appeals Council must nonetheless consider the new evidence if it is "(a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (internal quotation omitted). Evidence qualifies as "new" if it is not cumulative or duplicative, and qualifies as "material" if there is a "reasonable possibility that it would have changed the outcome." *Id.*

7

(quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.
1991)).   I review this determination de novo. *Id.* If evidence so qualifies and was
considered by the Appeals Council, then the new evidence becomes part of the whole
record that I consider in determining whether the Commissioner's ultimate decision was
supported by substantial evidence. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th
Cir. 2004).

    In this case, the new evidence was considered by the Appeals Council, and it
clearly qualifies as new, material and time-relevant. Gartzke's new evidence indicates Dr.
Hompland diagnosed him with a medically determinable impairment, and based upon that
diagnosis, performed a specifically targeted procedure that was a dramatic success.
Thus, this evidence qualifies as new (as opposed to cumulative or duplicative) since Dr.
Hompland was the first to ever objectively confirm a diagnosis of Gartzke's condition.
(*See e.g.,* ALJ's Opinion, Admin. R. at 28) (noting that Gartzke's medical records reflect
that all diagnostic testing was basically negative).  In addition, the apparent success of the
new treatment is strong evidence that the doctor's diagnosis is correct, and thus also
strong evidence that the ALJ's stage two finding of no medically determinable impairment
is no longer sustainable.  Finally, the new evidence is time-relevant even though the
diagnosis and treatment came after the ALJ's hearing, because this recent diagnosis
finally provides an explanation for Gartzke's condition, which by all indications has
remained constant since 2000.

    In addition, I conclude that the new evidence requires a remand despite the ALJ's
alternative findings, as it is apparent that the ALJ relied on the lack of a definitive

diagnosis in making several of his findings in the subsequent analyses, including his credibility determination and in his weighing of evidence from the various treating and consulting physicians. Given the serious conflict in the evidence in light of the new diagnosis and treatment, I cannot say that the ALJ's alternative findings, and thus the Commissioner's final decision, are supported by substantial evidence.

First, the ALJ appeared to have relied heavily upon the opinions of Dr. Manring and Dr. Schaeffer in formulating Gartzke's RFC and in determining Gartzke's credibility. Notably, both of these physicians merely performed a single consulative examination. In addition, both were clearly heavily influenced by the apparent lack of a physical cause for Gartzke's complaints of pain. In light of the new evidence strongly indicating that there actually was a physical cause for Gartzke's pain, these opinions provide little support for the ALJ's RFC findings.

Second, in light of the new evidence, the reasons that the ALJ gives for completely rejecting opinions from Gartzke's treating physicians are inadequate. The ALJ gave only two reasons for rejecting Dr. Kassab's opinion: (1) that there was no objectively verifiable physical cause for Gartzke's allegations of pain; and (2) that the opinion "is inconsistent with the other substantial evidence of record." *Id.* at 26. In light of the new evidence, the first reason is no longer valid, and the second is inadequate under the Tenth Circuit's treating physician rules. *See e.g., Robinson v. Barnhart,* 366 F.3d 1078 (10th Cir. 2004) (remanding because the ALJ's opinion failed to demonstrate that he considered the proper factors in determining what weight to give to a physician's opinion). In addition, the ALJ's treatment of Dr. Arnold's opinion is similarly deficient. Although the ALJ gave

9

more reasons for rejecting this opinion, and did not stress the lack of a medically determinable impairment when he discussed this opinion, the analysis falls short of demonstrating that the ALJ has considered all of the factors he is required to before dismissing a treating physician's opinion. For example, the ALJ fails to demonstrate that he considered the frequency of examination, the types of examinations Dr. Arnold performed, or whether Dr. Arnold is a specialist. *See e.g., Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).[3] In addition, since the apparent inconsistency between the treating physicians' assessments and those of the consulting physicians is now accounted for, greater analysis is required.

Finally, the ALJ's opinion indicates that he doubted Gartzke's credibility for the most part because of the apparent lack of a medically determinable cause for his complaints of pain, and because his reports of his daily activities were inconsistent with his allegations of such severe pain. Again, the new evidence severely undercuts the first reason. Further, as discussed below, the assessment of Gartzke's minimal daily activities should also be revisited.

Therefore, I find that when the new evidence is accounted for, the ALJ's RFC findings and credibility determination are not supported by substantial evidence. As a result, I must remand unless this error can be deemed harmless. This is not a case here. I may not affirm under harmless error analysis unless I can "confidently say that no

---

[3] Interestingly, some of Dr. Arnold's opinions are supportive of the ALJ's RFC findings. However, since the ALJ claims to have completely rejected this opinion, we cannot use it as evidence in support of the ALJ's findings. *See Chenery*, 332 U.S. at 196 (noting that a reviewing court must judge that determination "solely by the grounds invoked by the agency").

reasonable administrative factfinder . . . could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). In light of the heavy reliance on the lack of a medically determinable impairment in nearly every stage of the analysis, I cannot confidently state that no reasonable factfinder could have resolved the matter in any other way given this new evidence.

2.    Inconsistency between RFC and jobs identified by the VE

Although I will remand because of the new evidence, I will also address Gartzke's other arguments. Gartzke argues that remand is required because the ALJ's stage five findings are internally inconsistent. Specifically, the ALJ found that Gartzke was limited to unskilled work which involves simple job instructions, (Admin. R. at 30.), but three of the jobs that the ALJ identified require a higher level of reasoning. The *Dictionary of Occupational Titles* assigns each job it lists with a reasoning level based upon a scale of 1 to 6. (*See* DOT definitions, attached to Def.'s Br.) Three of the jobs the ALJ found Gartzke could perform require a reasoning level above that which is associated with a person who can only perform simple tasks. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (remanding to address the apparent conflict between a finding that the claimant is limited to simple tasks and a finding that the claimant can perform jobs which the DOT lists as requiring a level 3 reasoning level). The Commissioner apparently concedes that this discrepancy is not accounted for by the ALJ or the VE, but contends that the error is harmless because the two remaining jobs identified by the VE fit the reasoning level identified in the RFC.

On remand, in the event that the ALJ relies on the same VE testimony to establish

that jobs exist in the national economy in sufficient numbers that Gartzke is capable of

doing, the ALJ must explain these discrepancies and make an affirmative finding that the

remaining jobs exist in significant numbers in Colorado.

3.    Error in Assessing Credibility

In general, credibility determinations are the province of the fact finder, but

nonetheless should be closely and affirmatively linked to substantial evidence. *White v.*

*Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (as amended) (citation omitted).   The Social

Security rulings direct an ALJ to give reasons for a credibility finding that are supported by

the record and are sufficiently specific to inform reviewers of the weight given to a

claimant's statements and the reason for that weight. *See* Social Security Ruling 96-7p.

I have already determined that at least one aspect of the ALJ's credibility

determination is not supported by substantial evidence because Gartzke has now

produced evidence of a medically determinable impairment.  The second basis, Gartzke's

self-reported daily activities, also appears to be in error, particularly in light of the new

medical evidence.  On remand, the ALJ shall make a new credibility determination.  The

ALJ is reminded that "[t]he sporadic performance of household tasks or work does not

establish that a person is capable of engaging in substantial gainful activity." *See*

*Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (noting that "the ALJ may not

rely on minimal daily activities as substantial evidence that a claimant does not suffer

disabling pain") (internal quotations and alterations omitted).

Conclusion

Based upon my review of the record in this case, I find that the ALJ's findings are

12

not supported by substantial evidence.  Accordingly, the determination that Gartzke is not

disabled is reversed and this matter is remanded for proceedings consistent with this

opinion.

DATED at Denver, Colorado, on September 14, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge